Ms. Schuster, on behalf of the Board, please walk to the afternoon. Thank you, and may it please the Court. I'm Stephanie Schuster, here on behalf of the appellant, Pearl Glover. The record in this case supports only one conclusion, that Ms. Glover's ALJ made two material errors, and each independently warrants reversal. First, the ALJ misread P.A. Scheer's report as stating Ms. Glover can walk a mile without a cane, when in fact the report said the opposite, that Ms. Glover can walk a mile only with a cane. That mistake was dispositive of the ALJ's finding against Ms. Glover at Step 5 of the analysis. Second, the ALJ misread the record as containing no evidence of either when in fact the record shows unambiguous evidence of both. That mistake was dispositive of the ALJ's adverse finding at Step 3. The SSA does not dispute these mistakes on appeal. So you're not making an argument about per se disability, or you are? We are, under Step 3, Your Honor. What about the weakness problem? The weakness problem... It's an independent requirement that we are showing a weakness, right? Right. Pseudoplastication is a requirement under Listing 1.04c, and that requires leg pain and or weakness while walking. Not and or. Pain and weakness. I think it's been defined as both, but... I'm reading from the regulation. It says chronic, non-rad, radicular pain and weakness. Ah, I see, Your Honor. Well, a couple points on that. First, the ALJ... I don't mean that this is the most important thing, but I'd like to clear this argument. No problem. First, the ALJ did not rely upon the absence of weakness or pseudoplastication in finding against Ms. Glover. He only stated in a single sentence that there was no evidence of stenosis or ineffective ambulation. Second, there is evidence in the record to show that she has leg weakness. Now, she had certain tests that showed she had full strength in response, but she had other tests that showed non-specific breakaway weakness. And there is repeated testimony in the record about her being unable to walk long distances. So I take your point about the ALJ not relying on having the one sentence. I'm less clear on the other point. Yes, there may be some evidence on her part that there is weakness. On the other hand, there are two doctors' reports, one from 2015, one from 2013, both saying five out of five on strength. Sure. So it may be that there would be evidence to support a finding, but that's not our test. Sure. The question is whether there is evidence to support a finding that the ALJ did make. Correct. And the 2015 report that you mentioned is in the same report that's from Dr. Marion. He also stated that she had the non-specific breakaway weakness on manual testing and that she couldn't bear being up on her toes. In addition to saying that just in the manual test he was able to find five out of five full strength, but she still had signs of weakness in that same report. What is non-specific breakaway weakness, and is it defined in the record? It's not defined in the record. My understanding of it, Your Honor, is that it's when doing manual testing, trying to push on the arm or the leg, that you can only get to a certain point, so you break away from it. But as Your Honor pointed out, that's not the reason the ALJ relied upon. And the agency doesn't dispute that on appeal. Instead, the agency speculates at both Step 5 and Step 3 that the ALJ could have reached the same results, but for different reasons and reasons the ALJ didn't rely on. This Court doesn't accept such post hoc justifications for a denial of Social Security benefits. Following the Supreme Court's instruction in Chenery, this Court affirms Social Security decisions, if at all, only when it can do so on the grounds articulated in the decision by the ALJ. The SSA concedes those grounds are erroneous here, and that alone requires reversal. Turning to the Step 5 error, the ALJ concluded that Ms. Glover is able to both sit and stand for more than 30 minutes during an 8-hour workday, even though all of the evidence in the record about Ms. Glover's abilities to sit and stand show the opposite. Even Ms. Glover's primary medical provider, PA Shear, after treating Ms. Glover for 8 months, concluded that Ms. Glover can neither sit nor stand for more than 30 minutes during an 8-hour period. The ALJ credited the rest of PA Shear's assessments in her report, just not that one. The sole reason the ALJ disregarded that assessment was because he misread PA Shear's report that Ms. Glover can walk a mile with a cane as saying she can walk without one. That undisputed mistake requires reversal. The agency's own vocational expert testified at the hearing that there are no jobs available to a person who can't sit or stand for more than 30 minutes per workday. Ms. Schuster, did you say that the ALJ credited generally PA Shear's report? I thought he didn't really credit it. He did. The only aspect of the report he appeared to discredit was the limitations on sitting and standing. Did he generally say there wasn't supporting analysis? He noted that there were, in the space for providing additional findings on the medical findings report, he noted that there were not additional findings appended, but that was not a reason he discredited any part of the report. Through his analysis, the only part he focused on and said I can't credit is the statement about Ms. Glover's limited ability to sit and stand. Are you also relying at all on, or do you have a response to the ALJ's determination that her eschewing physical therapy was also a factor undermining her claim of disability? We do, Your Honor. To be able to use that decision against her to attend only one session of physical therapy rather than additional sessions, the ALJ was required under the regulations and case law to first find that Ms. Glover lacked a good reason for not attending more than one session, and he didn't make that finding. He didn't make that finding, he didn't explore at the hearing whether or not she had a good reason. That's the part I'm also not clear about. His report, the ALJ's report makes clear that she did give reasons. On page 854, Clayman stated that an orthopedist recommended physical therapy, but she was not satisfied with the services. In another one, Clayman went to a single therapy session and notified Dr. Yu that physical therapy was not effective. And then there's another place, I think, so both of those are essentially she went once and she thought it wasn't effective. Yes, Your Honor. That's the reason she gave. That's not surprising that the ALJ would think that one visit not effective is not enough reason to not keep going. Right, Your Honor. So she said it was not effective, and she also reported to Dr. Marion in that 2015 report that it was not effective because it increased her pain. Either way, while the ALJ noted that in his summary of the evidence, he noted those statements that she made to various doctors, he did not find that neither of those were a good reason or that she lacked any other good reason. And he didn't explore the reason behind what did she mean by not effective, what kind of increased pain did it cause at the hearing when he questioned her there. Instead, he just said, a bit hyperbolically, it is difficult, if not impossible, to believe that she would have a good reason. That's the most he said to it, and that's being generous to say he found lack of a good reason. And without that finding, he could not use Ms. Glover's decision to discredit her testimony. Even when she explains what the reason is, and it seems obvious that a single visit is not going to be effective, and therefore the fact that it's not effective on one visit is not a reasonable reason? Yes, Your Honor. Particularly because she said it was not effective, she also reported that it increased her pain, and because he didn't probe behind that, there could be a lot of reasons why a claimant doesn't go to a full course of physical therapy. The Seventh Circuit has recognized it could be too expensive, they don't have a way to get there. She didn't say any of those things. She said what her reason was. Well, she wasn't asked, right? Well, I don't know whether she was asked, but she told each of the doctors what her reason was. Sure, but she wasn't asked any more detail about that. And if it increased her pain, and that's another increased pain and lack of effectiveness, are grounds that the Seventh Circuit recognized in the Moon case are sufficient to be justifiable reasons. The Seventh Circuit said a single visit not effective was a reason? Yeah, it was two visits in that case, Your Honor. No other considerations in that case? Well, the point was that the ALJ didn't probe behind to find out, and so they said these could be justifiable reasons we don't know because the ALJ didn't ask. And he didn't do so here as well. But that aside, even if you find credibility problems with Ms. Glover's testimony, that still leaves P.A. Scheer's report with an uncontested finding that Ms. Glover can either sit or stand for more than 30 minutes in an eight-hour day. And the agency has suggested some alternative grounds in an attempt to rehabilitate that decision. Even if it were proper for them to do so, there's still zero evidence in the record that Ms. Glover can sit or stand for longer than that. The evidence is earlier, right? I mean, there's evidence from 2011-2012 that she has more abilities? I see my time's about to expire. Do you mind if I respond? That's fine. Okay. In 2011 and 2012, two agency doctors reviewed her medical file and opined that Ms. Glover was somehow able to sit and stand for a full six hours in an eight-hour workday, five days a week. Those conclusions are not themselves evidence. They're supposed to be based on evidence, and here they're not. There is nothing in the record to support the view that Ms. Glover can sit or stand for more than 30 minutes, much less six hours a day. And that's because they did not, in fact, physically see her or interview her? They didn't physically see her. They didn't examine her. But they also didn't explain specifically why they believed she was capable of sitting and standing for such prolonged periods of time during a workday, notwithstanding her contemporaneous report that she could only sit or stand for 30 minutes in an eight-hour period. If you have other questions, I'll reserve the rest of my time. Thank you. Good morning, Your Honors. Johnny Walker on behalf of the Commissioner for Social Security. May it please the Court. I want to start with the two errors that counsel for Ms. Glover identified. She first identified the purported error that the ALJ mistakenly commented that P.A. Scheer had opined that Ms. Glover could walk a mile without a cane. Now, first of all, appellant's counsel characterizes that as the sole basis for the ALJ discrediting P.A. Scheer's report. It is not. Part of the basis is obviously that P.A. Scheer provided no support whatsoever for the opinions articulated in her support. There was an area at the end of the form in which she was prompted to provide such findings and evidence for her conclusion. Where does the ALJ say that's the reason? Well, I think as appellant's counsel Hold on. Let me just take the question. Where is the place where the ALJ said that was the reason that the ALJ was discounting Scheer's report? I'm not saying it's not here. I just don't think so. Well, the ALJ does say, I believe appellant's counsel acknowledged that the ALJ does note that P.A. Scheer's report is without any conclusions or evidence to support it. And she says the ALJ does not specifically identify that as a, quote, reason for his conclusion. But it is worth noting that the ALJ articulated that fact and considered that fact in the section of his report dealing with Ms. Glover's residual functionality. I thought nobody concluded that there was no evidence to support it because, in fact, P.A. Scheer was the treating physician rather that there weren't reasons written. So that's different from the agency doctors who didn't actually meet her. Well, P.A. Scheer is not a treating physician. She's a physician's assistant. I understand that. But she's the treating health practitioner. I will say it's not clear from the record the course of her treatment of Ms. Glover and it's not clear from the record whether or not there was an actual examination conducted in connection with her filling out the assessment that Ms. Glover so heavily relies on. Now, the paper, the form that she provides... But nobody questioned it on that ground. The ALJ did not question it on that ground. The ALJ did question that it was not adequately supported by any findings from an examination. It didn't specifically identify it as a reason, but he articulated and considered that fact when opining on Ms. Glover's residual functional capacity. And he credited parts of the report. He credited parts of the report that were consistent with the remainder of the record, Your Honor, yes. What about the fact that Ms. Glover was given... I'm just looking for what it's called. She was given home health assistance with activities of daily living back in, was it 2013? A home health care... Home health aid care plan in October of 2013. That would seem to suggest that she's got some difficulties doing it for herself. It certainly suggests that she has some difficulties. I will note that that home health care aid only visited her once, I believe, a month or six months, and there's no evidence that it continued after October 2013. I mean, it certainly does indicate that she required some assistance at that time. But where Ms. Glover faults the ALJ in this instance is that the ALJ did not conclude that she must... And I think that if that were the case, that the ALJ's conclusion that she is not that limited is certainly not contradicted by the fact that she had a home health aid visit her occasionally for the period of six months in 2013 and 2014. You want to go on to the paragraph C problem? Yes, this is the listing, I believe, Your Honor, and Your Honor noted that there are three requirements essentially in that listing. One is the requirement of what's called... I read the listing. My question is, as far as I can tell, there's only one sentence about this on A49. No actual explanation for the reason. Is that wrong? Well, I'm addressing the sentence on A49 in the ALJ's opinion. Ms. Glover faults the ALJ. She says that the ALJ incorrectly concluded that there was no finding of lumbar stenosis. That's not quite what that sentence says. The sentence says that there was no finding of lumbar stenosis with accompanying ineffective ambulation. Can you tell me where we are on that page? Yes, you're referring to A49, correct? I'm referring to the sentence that says the undersigned has also considered whether the paragraph C criteria are satisfied. In this case, the evidence fails to establish the presence of the paragraph C criteria. And I, Your Honor, am looking at page A48. This is under heading 4, which discusses the listing, and it's the third paragraph up from the bottom. And what the ALJ says is that the evidence does not satisfy the criteria of 104 because it is devoid of evidence of nerve root compression, spinal arachnoiditis, and those are not disputed, or ineffective ambulation. Are those paragraph C requirements? I believe that only the lumbar spinal stenosis is a paragraph C requirement. So lumbar spinal stenosis requires that it be accompanied by weakness, as Your Honor noted, by pseudo-calculation. I'm not going to get that word correct. Thank you, Your Honor. Pseudo-claudification. And by ineffective ambulation. Now, my colleague characterizes pseudo-claudification as simply difficulty walking or weakness. That's not what it is. Judge Harvey has a footnote to this effect. It's actually, I gather, a pinching of the spinal nerve due to inflammation of the spine. So it's quite different from weakness. And it can be demonstrated by medical imaging and indeed the listing requires that it be demonstrated by medical imaging. Ms. Glover tries to get away from that by saying that it's simply pain and that it's symptomatic and can't be demonstrated by imaging when in fact it can and is required to be by the listing. The ALJ says nothing about the shortfall of necessary medical imaging to support that factor. That's correct. The ALJ notes the absence of accompanying ineffective ambulation. Whereas the evidence shows, in fact, that she could only walk with a cane and now I'm forgetting which one, but one of the medical personnel mentioned her gait was, you know, the kind of gait of someone limping, to use the common sense  indicating that she was in pain. That's correct, Your Honor. Much more is required, however, to meet the standard for ineffective ambulation that would require a finding of per se disability. As the appellant notes, the general definition supplied by the listing requires that ineffective ambulation be a form of require an assistive device that would require two hands, that is a walker. But it goes on to say that's not the only requirement. And it's not the only ruling. I acknowledge that that's not the only ruling. It is a general definition and it is certainly instructive and would certainly indicate that the use of a single cane is insufficient to meet the definition under the listing. But it does provide some other examples and the only instances in the record that Ms. Glover cites to support her meeting those examples are the notes by certain consultants that she entered their office using by limping or laboriously. But that simply is not enough to deem Ms. Glover disabled per se and incapable of any form of work. Does the ALJ discuss that? The ALJ does not discuss that. Not mentioned at all, right? I don't believe so, Your Honor. So the lack of that we don't know whether that's a problem the ALJ found or not. We do know that he found a lack of ineffective ambulation. He did note that the record was devoid of that. And there certainly is not any indication of pseudo-clavication as Magistrate Judge Harvey noted. There also, as Your Honor noted, is a separate requirement for weakness. And anytime, it's not just that Ms. Glover occasionally passed a strength test and occasionally passed a... Her point was that that wasn't in the ALJ. Is that right also? It wasn't mentioned? It's not specifically mentioned under the part of the decision about the listing. The third independent requirement that must also be met and that has not been met that she exhibit ineffective ambulation is mentioned. I will note on the weakness point, as I was saying, that it's not just that Ms. Glover occasionally fails or occasionally passes a strength test. Every instance in the record in which she's administered a strength test, she's found to have full strength or 5 out of 5 strength. She's also found to have full range of motion every time she's administered such a test. And she passes a strength test without pain. And what about the point that opposing counsel mentioned in that same report, I think from Marion, about the pressing of the number, what the... Breakaway weakness. Right. As appellants counsel noticed, it's not specified what the breakaway weakness is, what extremity, whether it's an arm or a leg, or at what point Ms. Glover broke away. I'm sorry. What Mr. Marion does say is that Ms. Glover does have full strength and full range of motion based on an examination. Thank you. I know she reserved the remainder of her time, but I noticed that she was five seconds over. But we'll give you two minutes. Thank you, Your Honor. Just a couple of quick points. First, on the question of ineffective ambulation, my colleague said that all that we cite is evidence of limping and walking slowly. That is not accurate. We cite a great deal of evidence showing that Ms. Glover can't ambulate effectively. Starting first with how the agency defines ineffective ambulation, a person can ambulate effectively only if she can travel without companion assistance to and from a job, and only if she can otherwise sustain a reasonable walking pace to carry out daily activities. Ms. Glover can't travel without companion assistance at all. She barely leaves her house, and when she does, she never goes out alone. Global Healthcare assigned a nurse to accompany her to her doctor's appointments, and that alone is ineffective ambulation. Another example of ineffective ambulation is the inability to use public transportation. There's evidence of that in the record as well, at A304, where Ms. Glover reported that she can't walk to and from the bus stop or metro station, let alone stand for as much time as it might take for the bus or train to come. That is also ineffective ambulation. Second, regarding the argument that there are no medical findings appended to P.A. Scheer's report. That report was the result, as it states on its face, of a medical examination. More importantly, though, is that it came after Ms. Glover's years of treatment at Unity Healthcare, particularly, and eight months of treatment with P.A. Scheer as her primary care provider. And that range of treatment is sufficient if Ms. Glover, sorry, apologies, if P.A. Scheer had simply wrote on the line, see file, we wouldn't be having this conversation. So, that supports the medical findings. Separately, just to point out, pseudoclaudication, as all of the courts that have looked at it, save the magistrate judge below, have found, is only a symptom. It is leg pain, and it can't be shown on medical imaging, and so courts do not require that. We cite that on the penultimate page of our reply brief. Thank you, Your Honor. I was just going to ask, she was seeking disability benefits based on mental health as well as physical health issues, and didn't appeal based on the mental health. How does that figure in? I mean, if some of her condition, inability to go unassisted, is affected by a baseline of depression and low functioning in terms of mental health, just take her as we find her? How does that figure in, if it does? It does. Did the ALJ take it into account? So, when looking at the residual functional capacity to determine whether the claimant can perform additional jobs in the national economy, what you have to look at is the combination of all impairments, severe and non-severe, even those that the ALJ found where she has, but they don't rise to the level of severe at step two, and you look at the combination of those impairments to determine what she can do on a regular and continuing basis for a 40-hour work week. So, that does factor in. You don't discount the pain that's caused by depression. And as you read it, did the ALJ take that into account as a background level? It's unclear. Not in a way that it specifically said, this takes more, this takes less. We do point out that Dr. Marion had said that her background mental health issues do contribute to her musculoskeletal pain. There's a lot of research to support that. The ALJ didn't specifically factor that in, but he also didn't factor it out. And that's why it wasn't the primary basis for our appeal. Okay. Thank you very much. We'll take a matter under submission.
judges: Garland, Pillard, Wilkins